V. Public Service of the United States of America,             Our final case of the morning is number 2410903, Vivian Ruggieri v. NCL Ltd. Good morning. May it please the Court? Jack Ryder on behalf of NCL. Your Honors, as a threshold point, I'll start by noting that this case never should have gone past the summary judgment stage in light of the fact that the plaintiff failed to allege any of the facts and allegations that were then raised in opposition to the summary judgment motion. And I'll turn to the cases that this Court highlighted in its memorandum to counsel to evaluate and establish as a threshold matter that this Court absolutely has the authority to consider, evaluate, and reverse on the fact that the summary judgment motion should have been granted. The Court has highlighted for further discussion the cases of U.S. v. Certain Real and Personal Property, Lind v. United Parcel Service, and Dupree v. Younger. And, Your Honors, the takeaway from these cases, most particularly in the Dupree case, is that this Court has the absolute authority to examine and review an order denying a motion for summary judgment that is based upon legal issues, certainly matters of law that were not evaluated or adjudicated as matters of credibility or disputed issues of material fact. Well, so here's where I don't necessarily know that that is the correct phrasing. So whether there's a material issue of genuine fact in a record, that's actually a matter of law, right? That's a question that's a matter of law. And we in the Supreme Court have said that's not one we're going to review from the denial of summary judgment. So just by saying that something was a legal question doesn't seem to necessarily get you in the Dupree bucket. Well, Your Honor, I look to the language of Dupree which says that a post-trial motion under Rule 50 is not required to preserve for appellate review a purely legal issue resolved at summary judgment. So purely legal issue, I guess. So how is this a purely legal issue? So this is a purely legal issue because the question is whether or not a pleading has sufficiently alleged specific facts upon which a party is basing their claim. If that makes something a purely legal issue, then isn't it a purely legal issue whether the record contains sufficient material evidence such that there's no genuine issue of material fact? I disagree with that a little bit, Your Honor. Let me ask you this. What could arise at summary judgment that is not a purely legal issue? Well, there could be matters of credibility. Well, you don't resolve credibility at summary judgment. Well, that's right. So you're saying... I thought you said what could not be. You're asking what could be a legal issue? No, what could not be a legal issue. What do you believe when we have cases that say we are not going to review the denial of summary judgment and then Dupree says they're purely legal issues, what is preserved? A perfect example of that would be here is if there was a dispute as to whether or not the weather conditions were in fact rough. That would be a disputed issue of material fact that would be evaluated at a trial. But in this instance, what makes it a legal issue that can be evaluated by the sufficiency of the complaint is where this was pled, and it's undisputed, this was pled, I mean, I would submit respectfully that there is no doubt this was pled as a failure to warn based upon the conditions at sea. Okay, we can talk about that. One follow-up question to that, and I want to make sure you get to the other issues. It just seems to me that it isn't undisputed. Your opposing counsel says you can read the complaint to at least put you on notice generally enough for pleading purposes that it's failure to warn with regard to dangerous conditions at sea, including the rolling wave that ended up resulting here. And I guess if that's the case, then it becomes whether there's a genuine dispute about the nature of this complaint, which sure seems, I think is what Judge Bradsher's question is, sure seems a lot like whether there's a genuine issue of material fact when looking at a summary judgment record. Sure, and Judge Luck, I disagree with that because just like this court stands on equal footing as a district judge to evaluate whether a complaint on its face does in fact articulate a claim for negligent operational training as opposed to failure to warn, that's not a disputed issue of fact. That's reviewing a complaint where this court stands in the same exact proposition. We do the exact same thing when we review grants of summary judgment though, I guess. So I'm trying to distinguish. I'm trying to figure out what it is. Let me ask you this hypothetical. One of the things that the district court could have done is said, you know, I think that this complaint includes this additional claim, but just as a matter of sort of precaution, I'm just going to ask you to amend the complaint, file an amended complaint that includes this additional claim. Could the district court have done that? It should have been amended. Well, if we rule in your favor, should we send it back down for the district court to allow them to amend? Your Honor, no, because the plaintiff waived that. They had the opportunity to seek leave to amend it. Well, because the district court said we don't need to do that. I think that's a legal issue. The district court could have just said, well, we'll just do that. But the district court did not, and the plaintiff didn't ask for it, most importantly. And if the plaintiff has an obligation under Gilmore v. Gates and Boone v. City of McDonough, the plaintiff cannot come in in opposition to a summary judgment motion and amend by responsive argument. They could have sought leave to amend and did not do so. That's a waiver. This is clearly a legal issue, and I would submit respectfully if you look at even in Lind, the matters that went to the court as a statement of issues of fact were about credibility determinations. This court can look at this complaint, and it's not a credibility evaluation. There was no dispute. And let me get to the other issues, because I know my time is fleeting. Let's talk then about whether or not as a matter of law, which this court can absolutely evaluate, and to be clear, this was raised also in the post-trial proceedings. So we've got this both at the summary judgment stage and this court can evaluate it from the perspective of post-trial. That is, were the warnings fair and adequate as a matter of law? We've cited multiple cases for the proposition that whether warnings can be decided as a matter of law is a question for a court to evaluate in Cressley v. Oceana Cruises, a case back in 2017. This court made clear there that warnings that were given kind of over a PA system, the general kind of warnings, were in fact fair and adequate. And when we look at the warnings in this case, I respectfully submit this court absolutely confined as a matter of law that these warnings were absolutely clear. There were warnings on embarkation day played continuously on the safety channel in passengers' cabins about even in calm seas or while docked in port, ship can move suddenly or the wind can change. These are all in our brief and all cited through docket entries. There was a tender-specific video where it played in passenger cabins the day before and the day of tendering that warnings regarding the movements relative to the ship. Remember, the tender may be moving more than the ship. Always remember, we will only tender when it's safe to do so and that even the tenders are much more likely to move around, especially if the wind rises or the sea develops a swell. There are warnings about sudden motion, warnings about maneuvering. The point is that there are warnings that even in calm harbors, passengers were told repeatedly that they're to be warned. And this notion that there should have been another warning in the 25 seconds from the time there was this indication that the ocean, there might have been a swell and the actual rocking of the boat that resulted in the claimed injury, the alleged injury here, I would again submit that that is an unreasonable expectation. Yes, Judge. I get your point. And I mean, frankly, I think you've got a strong case that you just lost in front of the district court as a fact finder. But, I mean, isn't it materially different than telling someone, you know, things may fall from the ceiling? Things may fall from the ceiling. Like, watch out, things might fall from the ceiling. And then when you see something falling from the ceiling, say, there's something fall from the ceiling. Like, watch out, it's literally falling right now. Isn't that a different kind of warning? Your Honor, the question is about reasonableness. Yeah. You know, the Kamar case talks about, you know, the duty imposed on a ship owner, like a premises owner in many cases, is a duty to exercise reasonable care. Yes, Judge. That is a fact question. In other words, the standard of care on a ship, it doesn't seem to be something within the expertise of anyone on this panel. Well, I'll speak for myself. And certainly the district judge in this case. But that's why we bring in experts. You brought one in and they brought one in. And their expert said that in the 25 seconds after he steers into the wake, that he should have warned, that it would have been reasonable for a captain in that situation to have given the warning and that he could have given the warning. How is that not a fact issue for the fact finder to decide? I understand, Your Honor. But this is not immune from review. It is a clear error standard. I acknowledge the higher standard. But it's not immune from this court's evaluation. Let me be clear. I didn't say that. I didn't hear Judge Bratcher saying that. But I guess what I did hear Judge Bratcher saying, what I sort of understand, too, is the fact finder had evidence on both sides and made a call. And there was evidence from their expert. I can cite you portions of the transcript where it's clear that their expert did testify to that. Where there's evidence supporting that from an expert, how could we meet the clear error standard, I guess? Here's how. Here's how. I start from the premise of this court can go back all the way to summary judgment and evaluate it as a question of law. To the extent that this court evaluates it from a perspective of the fact finder, in this case the district judge, then it's evaluated under the clear error standard. I mean, this court reverses abuses of discretion and clear error. There's precedent for that as well. And I would submit, I know I'm moving into my rebuttal time. I'll just go a little bit further so I don't miss on any issues. But I just want to make very clear that in Cressley, this court established as a matter of law that PA warnings were effective and appropriate when the C's were rough. It was a very similar situation, except there again it was rough C's. Here you have so many warnings that were provided that I would respectfully submit that to suggest there should be that one more warning in 25 seconds on otherwise calm C's because a wake is coming after the passengers had been told repeatedly is an unreasonable expectation. Let me get to the limitations of damages just so I don't leave anything out. I know obviously, of course, your honors have reviewed the briefs. I'm going to ask them questions about that. Understood. You can just trust me to ask them questions. Thank you, Judge. You can sit down. Or you can keep talking if you want to. If you keep talking, though, you are going to be eating into your rebuttal time. Understood. So I would also request that the court impose the limitations set forth in the ticket contract. I would ask that the court also remit these damages with respect to these excessive damages based upon the credibility findings made by the judge. And on the cross appeal, I would ask that this court affirm there because, again, the district judge very clearly identified so many credibility factors that weighed against a future permanency pain and suffering damages. And with that, I'll reserve the rest of my time for rebuttal. Thank you. May it please the court, Philip Parrish on behalf of Vivian Ruggieri, to my right are co-counsel Jack Hickey and Lisa Goodman. Judge Brasher, I think you are correct that the summary judgment presented factual issues. In fact, the district court announcing his ruling, and this is at DE 109-1, pages 35-37 identify no fewer than five disputed issues of material fact. One, what were the sea conditions as the tender was docking? Two, what caused those conditions? Was it an overall bad sea? Was it waves from other vessels? Counsel, that's not the legal issue that your opposing counsel identified. What your opposing counsel identified is the legal issue of whether this was properly alleged below, and if not, whether you can amend the complaint without a Rule 15 amendment under a response to a summary judgment motion. That's the legal issue they're identifying. And the question, I guess, is, A, is that a pure legal issue of law that comes within the Dupree exception? That's the question. No, because we weren't stating a new claim. The cases that they rely on, Gilmore v. Gates and Boone, talk about stating a new claim. You may be right. I'm sorry. My question is, is this a pure issue of law that we can even review to begin with? You're going over the steps saying I'm right, and you may be. But can we even review the issue is the question. I don't believe you can, Your Honor, because it is tied up with facts. And the facts are alleged in the complaint. And here's what NCL knew from the day this happened, or the next day when she reported to the clinic, and they had her fill out a form. She blamed the incident on the tender operator, and she said it crashed into the thing. We know why it crashed was because of a wave. Whether it was 100 waves, 10 waves, or one wave, it was because of the waves. The description that the incident is fully described in the complaint, that they were approaching the vessel, that the ship began to pitch and roll, and that all of a sudden it's hitting the vessel. It actually hits the dock that's attached to the vessel. All of that is in the complaint. This is not a case where it's alleged that it was a slip and fall, and then all of a sudden we discover it's not a slip and fall at all. She was injured on the tender. These are factual issues. There was sufficient evidence there, and this Court's decision in Frasca understands it's non-published. Judge Pryor, you were on that panel. There was a similar argument made by NCL in that case, that because there was a misstatement in the complaint about the source of the water, that you then couldn't come in with actual evidence of the source of the water at summary judgment, because then you were somehow stating a new claim, and this Court said no. It looked at the Gilmore v. Gates case that they rely on and the Georgia Kerry case to say, obviously you're going to have more and more refined factual understanding of the case at summary judgment. You're not limited to just the facts that you put under Rule 8 to state a plausible claim of failure to warn. That's what, I mean, they didn't file a 12B6 here, and the complaint clearly states a claim for failure to warn. It states three claims for failure to warn. So there was no change to the claim. They were just arguing that, I refer to their summary judgment as a nanny-nanny-boo-boo summary judgment. They understood what this case was about. They had all of the discovery. They knew more so than the plaintiff did when the complaint was drafted how this incident happened. They had their own expert they even referred to in their summary judgment response saying, I reviewed the video, and it looks like everything was done properly here. Those are disputed issues of fact. That's the way in which it seems like this is sort of a factual question to me, is that what they're alleging is that they didn't have notice of this claim. It seems like that's what they're saying. I mean, that's the concern, I think, that says you can't just amend your complaint in response to summary judgment is that you can't just change things up or they wouldn't have notice to do discovery and stuff like that. And then the district court's response to that was, oh, yeah, you did. You had notice of this. There was an expert disclosure, and sort of you had plenty of time to have your own expert. And that's the way in which this seems like the way the district court resolved this issue was really based on the way the district court kind of viewed the record as it progressed through the discovery period. And it's not a waiver if we believe that we have adequately stated a claim and that the defense was on notice of it, and that is precisely what the district court found. Could you address the damages, particularly the damage, I guess I'll call it the cap, the damage cap on the ticket contract? How is that not enforceable? Because it's, as we know, there's a two-prong test, and one talks about the physical characteristics of the... Can I start there? Sure, of course. So you're talking about the Schenkels test, right? That's one of the first statements of it, yes. Silvestri before that. Is that our law? Well, so there are a number of cases from this court. One is Nash. That was the first case that I think where this court addressed it. When you say a number, you're talking about Nash, Kornberg, and Carpenter, right? Right. And those seem to set out a different test than the Schenkels test. Am I wrong on that? Well, so in part. So Schenkels deals with it. There's generally three provisions in a ticket that are dealt with in these cases. One is the one-year contractual statute of limitations. It's not a statute, but it's a contractual limitation period. The second is a forum selection, and the third is this newer because the damage cap. Why would we treat a different test for the damage cap than, for example, the one-year statute of limitations? So you're right. Nash, Kornberg, and Carpenter are really about limitations. Their limitations have to do with, if we're talking about like stricter tests or lighter tests, that has to do with claim preclusion. In other words, if you don't bring within one year, you are precluded. The damage cap isn't a claim preclusion at all. It limits the amount you can recover, but doesn't limit preclusion. But the test that we set out in those cases as to the one-year statute of limitations, which again seems to me to be more onerous, is that as long as the ticket, quote, provided the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract. Kornberg states, as a general rule, conditions or limitations in a contract for passage are valid if the ticket provides adequate notice, and then Carpenter says that the controlling principle is that there must be adequate notice to the passenger of the suit time limitation. It's a time limitation there. And that such limitation be a part of the contract. Those seem to be the elements of how we evaluate those things. Why would we not do that here? Well, I think you still get to the same conclusion, which is that it should not be enforced here. And let me back up for a second, and I will get to that specific question. The initial cases for about the first 30 years or so, in the 80s, 90s, were almost all about the one-year limitation to sue. I think it's wrong to look at whether one is more detrimental to you. Those cases point out that, and they acknowledge that, passengers don't read these contracts. They don't read them before they get on the boat, and they're probably not going to read them in their birth, as Judge Friendly said in the Second Circuit opinion, not going to read them for pleasure in their birth. But once an incident happens, once they've been injured, they've got an entire year to read it. And this court in Nash said, in the last paragraph, Closter's placement of the notice provision on the passenger copy makes practical sense, as Mrs. Nash was not likely to read it until she was injured, and by that time, it was essentially the first page in her ticket packet. Now, turning to this ticket, and this is Joint Exhibit 13. It's in the record. I don't know exactly where it's in the record, but it's the ticket contract. You'll see, I've highlighted this little box at the top. It directs the passenger directly to two of those three important provisions that have been part of the case law in this, and those are the provisions on the one-year limitation and where you need to sue. Under adequate notice, if you look at those three cases, none of them had specific pointers. None of them, frankly, would have passed the Shankles test. What they did say in those is, had a paragraph like that up front is, this is your contract. This is binding between us. I'm paraphrasing. Read the provisions of this contract. This is important stuff. And then buried in paragraph nine is the you have to bring your claim within one year. I don't know why where there's the bold, this is your contract. This is binding between us. Read this carefully, including provisions on paragraphs five and ten, that you wouldn't look on page three and see in regular letters, in regular language, hey, there's a limit on how much you're able to recover. First, addressing what the ticket in NASH said, and then addressing our ticket. In NASH, in bold red type, it said, directed the passenger to terms printed elsewhere in the ticket, i.e., pages six, seven, and eight. That's the specific reference to the provisions that are important. And so it was mentioned in NASH. It was, I think, essential. Six, seven, and eight is a lot of language and a lot of places that are buried here. Well, the ticket provision here is a full page. The one dealing with the damages is a full page. So, again, if you're specifically directing, knowing the cases, including this court in NASH, acknowledge that we don't. Now, the law says it doesn't matter whether you read it, we're going to enforce it if, upon reading it, it would have been reasonably communicated to you. By the way, Ms. Ruggiero testified, if I'd read this complicated provision, I don't know if she used the word complicated, but it is complicated. If I'd read this provision, I wouldn't have understood it. She was also found not to be credible with regard to her claims of damages, though. Well, okay. That gets to our cross-appeal. And I've said much about it in the brief, and I'll try to get to that point as well here in the next four and a half minutes. Just a really quick question about the cross-appeal. If we were to reverse on this damages cap, does that resolve your cross-appeal as well, in the sense that we couldn't give you the relief request under your cross-appeal? Or is there something that I'm missing about that way those two issues work together? So long as the SDR is less than what was awarded for pass, then you wouldn't necessarily have to reach it because the numbers don't reach it. So you need to go beyond the cap before you get to the cross-appeal. Right, right. But courts, the Ninth Circuit in Wallace, Judge Cook's order in Waddenstott, this provision is nothing like a one-sentence provision that says, you've got to sue us within a year, which gives you a year to read it after you get injured. And it's nothing like, if you sue us, you must sue us in Miami. This is a full-page, legalese, multifaceted provision that has a couple of separate dollar numbers, a couple of separate SDR numbers, requires you to go outside of the document. In fact, two of the three links that are provided there did not work at trial. They did not work. By the way, this is also, in essence, a one-off case. They fixed this ticket. They recognized they had a problem. They testified at trial that it had been changed. They didn't say why, or they said it was COVID. But we know from the supplemental authority, they filed RITC, R-I-T-C-E-Y. They filed it as a decision from, I think, Judge Moore of the Southern District, an incident that occurred three years later. They now point you to paragraph, and now it's in paragraph six, they point you to all three of those things in this box at the top. They recognized they had a problem there. They recognized that, first of all, it's very rare, and I'm not saying they testified that they recognized that, but let's be realistic like Judge Crimley was, like this court was in Nash. Passengers aren't reading these things. If at best, you hope they read the things that you point them to. If you're going to point them to these two other provisions, which are easy to understand and which are further along in the ticket, go to paragraphs 10 and 14. So you're scrolling through this thing a week before, when it's sent to you a week before you get on the vessel or 10 days, and you're going right past. They whistle right past the very, very complicated, difficult to understand. So even if it met the physical prong, it's just simply not something that the average cruise passenger, and certainly Ms. Ruggieri herself specifically testified that she wouldn't have understood. There's no reason to disbelieve her on that. There's no reason to disbelieve almost anybody who would tell you that they would read this and not understand exactly what this meant, given the length of it, the legalese, the different numbers that are mentioned there, the references that you have to go elsewhere. It sends you to the Wall Street Journal. Well, that's behind a paywall. What are we expecting the average cruise passenger to understand if we're not at least pointing them to that? And so it would have been very easy for them to do it, as they did for the other two simple-to-understand provisions, but didn't do for this provision. So I guess in response, I don't think we have in the 11th Circuit a separate reading. I think we still use the two prongs. Nash certainly looked at those, I believe. And in all the cases, you know, there's one case... Nash said, is it a contract and is there adequate notice? That's what Nash said. But the adequate notice goes to the physical characteristics and whether the cruise line has drawn specific attention. It's almost worse to not draw... They were better off saying, here's the contract, it's binding, read it all. They didn't even do that. They said, here's the contract, pay specific attention to these two points and went right past the very difficult-to-understand damage limitation, which... Is there anything... Does it matter at all that this is an EU... I mean, correct me if I'm wrong about the nature of this, but it's my understanding this is an EU regulation that caps damages so that this is imposed by a foreign government. So it's not even the cruise company deciding to cap damages. Should that factor at all into our assessment of whether this is an enforceable provision? I don't believe so. I think I look at those EU regulations as more like an administrative reg that follows the treaty. Now, the United States hasn't even adopted that treaty, so this is strictly a contractual issue. Yeah, well, this is point-to-point in Europe. I mean, right, the cruise is point-to-point in Europe, so I mean... Of course, yes. But again, it's not... It's not something that the cruise line has to follow. The EU regulations don't say any cruise line must enforce this damage cap when they're sued in Miami as their ticket contract plainly and simply requires that they do. But the EU regulation, I mean, just to be clear, it does require them to have a damages cap. But they could waive it if they wanted to, is what you're saying. But, I mean, could they issue a ticket? I forget, was this Marseilles? This is somewhere in France, right? They took off and ended in Rome. The incident occurred in Cannes. Okay, well, so could they issue a ticket that doesn't have this cap on it? Of course they could, yes. They could? There's nothing in the record that suggests that they were forced by law to do this. In fact, all the case law that deals with this provision says the United States hasn't ever signed this treaty, and so it's strictly a matter of contract. I see that I'm out of time, so if there are no further questions, thank you. Thank you. Just to circle back briefly on the pleading issue and the matter of law, I do think it's significant that the plaintiff is the master of their complaint. And I would again submit that the allegations pled in this case were abundantly about the weather conditions, failure to warn about weather conditions, rough seas in Cannes. It was throughout the pleading. So as a threshold matter, the issue of, it wasn't even a matter of were we on notice or were we not on notice. As much as it was, the plaintiff is the master of their complaint. They define the manner in which their case is going to progress, and this court has made clear that you don't get to then amend your allegations at the summary judgment stage and completely convert the case from what was a failure to warn because the weather was bad to, okay, well now the sea was as calm as glass and there was no wind, but it must have been a negligent operation in terms of how the tender was being driven or operated. Let me turn to the ticket contract, since that took up so much time in terms of the, unless there are any questions about the pleading issue, Your Honors. Hearing none, I just would again submit that this court can and should reverse and remand for entry of judgment on that threshold basis. I will also reiterate, again, that this court can and should reverse and remand based upon the fact, or judgment for NCL, based upon the fact that these warnings were absolutely fair and adequate. You know, I again submit the standard is one of reasonableness. As for the ticket contract, I'll turn to that since, again, Your Honors addressed that with counsel. Clearly here I agree with at least some of the references that were made by Your Honors in terms of the fact that this contract, this ticket contract, was absolutely clear, easy to understand, easy to read, and quite frankly, I believe it was in Nash's case that this court cited the Merrick case out of the Third Circuit for the proposition that there's no case that states that a warning is legally insufficient unless it includes explicit references naming each of the contractual terms or conditions having the potential to affect the legal rights of the passengers. A contract is a contract. It's binding. And to the extent that this court, whether, and Judge Luck, you noted the fact that in Nash and some of the other cases out of this circuit, those provisions that were enforced were even more onerous because they could have eliminated the ability to even bring a cause of action. This was, in fact, a very clear and specific limitation which other courts have consistently supported and enforced. And here, when one were to look at the physical characteristics of the actual document... Should we look at the Schenkels factors to determine whether there's adequate notice for this particular provision? I think this court can do so. This court has applied Schenkels. I think it was in Lebedinsky. It was a different provision, I believe, in that case also. But in terms of what this court examines, whether this court... To the extent that this court were to examine those aspects or those tests, I think that this easily satisfies those tests. And I just want to make that clear because you have, number one, a very clear, specific provision, easy to understand, same-size text as the other provisions, not buried in a footnote, written very clearly, and, for example, describing the features of the type, conspicuousness and clarity of the notice on the face of the ticket, the manner and ease in which a passenger can read the provisions in question. The fact that Ms. Ruggieri says that she would not have read it anyway does not make it any less binding. In fact, I would submit that that makes it even more difficult for them to challenge it now. A contract is binding whether it's reviewed or not. And for the court to examine under that principle the extrinsic factors, here Ms. Ruggieri had unlimited opportunities to review the contract. When she booked her cruise, her purchase confirmation contained a link to the contract. That's at docket entry 86-20. The contract could have been reviewed on the website. During online check-in for the cruise, Ms. Ruggieri checked a box, saying she had read and agreed to the contract. And in Hadlock v. Norwegian Cruise Lines, a case out of the Central District of California, indicated that the passenger's electronic acceptance of the contract, just like flipping through pages, the clicking under the modern world we live in, when you click, I agree to the terms and conditions, you are acknowledging that you have reviewed and acknowledge that you are bound by them. So if this court doesn't reverse and remand with directions to enter judgment in favor of NCL, at a minimum we do respectfully ask this court to reverse and remand to enforce the ticket contract limitations. Could you address my question to opposing counsel, which is, so I just want to make sure I'm understanding this EU regulation, right? So the EU regulation, as I understand it, requires carriers to have a certain level of insurance and then caps liability at these rates. Is that what it does? So here's how I understand it, Your Honor. This is from the Athens Convention, which is technically not binding. My understanding is that is not a treaty that the United States has it specifically. Yeah, clearly we're not bound as a sovereign to that. I guess I'm trying to figure out, is this like a law? I interpret this as a contractual limitation, Your Honor, adopted by the contract that NCL imposes on a vessel that is completely outside the United States from port to port, which is where courts have consistently held that this type of provision is applicable. So I don't know, Your Honor, if it falls specifically under an EU regulation, per se. There may be implications of that law, but I interpret this, my understanding is, that this is imposed as a contractual obligation between the parties that is enforceable by virtue of contract law and enforceable because courts have acknowledged that because this is a ship that traveled between two European ports and never entered the United States in this voyage, that that language applies. Unless there are any questions, thank you for your time today. I appreciate it. Thank you, counsel. Court will be in recess until 9 a.m. tomorrow morning.